**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

SENETHA MONTGOMERY,

                Plaintiff,

v.                              CIVIL ACTION NO.   5:11-cv-00698

APPLIED BANK,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant's Motion to Dismiss or, in the Alternative, Stay Proceedings and Compel Arbitration* (Document 4) together with Plaintiff's Complaint (Document 1 Ex. A.), the parties supporting memoranda and all submissions relative thereto.

**I.**

On August 19, 2011, Plaintiff, Senetha Montgomery, filed this action in the Circuit Court of Raleigh County, West Virginia, against Applied Bank, a Delaware corporation. Plaintiff's Complaint contains three counts based on an allegation of "not less than five hundred fifty-five (555) calls" placed by Defendant to Plaintiff's cellular phone between February 6, 2011, and June 29, 2011. (Compl. ¶ 7).   Plaintiff alleges that all calls made during the relevant time period were made after notification that Plaintiff had revoked Defendant's right to contact her. (Compl. ¶ 6). Count One asserts a claim for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (2006). Count Two asserts a claim for several violations of the West Virginia Consumer Credit and Protections Act ("WVCCPA"), W. Va. Code §§ 46A-1-1-2 *et seq.* (2011),

and Count Three is based on an allegation of violation of W. Va. Code § 61-3C-14a (2011).   This state statute prohibits the making of telephone calls by use of a computer with the intent to harass after being requested by a person to stop contacting them. (Compl). On October 4, 2011, Defendant properly removed this action to this Court. (Document 1).

On October 12, 2011, Defendant filed its Motion to Dismiss or, in the Alternative, Stay Proceedings and Compel Arbitration, wherein Defendant argues this Court should compel arbitration because Plaintiff agreed to arbitrate her claims and the arbitration agreement is valid and enforceable. (Document 5 at 2-5). Defendant further argues that because all of Plaintiff's claims are subject to the arbitration clause and a stay would serve no useful purpose, the Court should dismiss the case. (*Id*. at 5-6).

Plaintiff argues that Defendant's motion to dismiss or compel arbitration should be denied for three reasons.  First, Plaintiff argues two of the three arbitral forums listed are no longer available, and the third, by its own rules, has created a forum that is unconscionably one-sided. (Document 9 at 2-6).   Second, Plaintiff contends she did not assent to arbitrate what amounts to criminality (*Id*. at 6-8), and lastly, she argues the arbitration clause in this contract is unconscionable under *Brown v. Genesis Healthcare Corp.*, ___ W.Va. ___, ___, ___ S.E.2d ___, ___ (Nos. 35494, 35546, 35635, June 29, 2011). (Document 9 at 8-9).   The Court will address each of these arguments.

## II.

### A.  *General Arbitration Law*

The Federal Arbitration Act ("FAA") provides that:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

2

arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2006). Federal law strongly favors arbitration and interprets arbitration provisions under ordinary contract principles. *AT&T Mobility LLC v. Concepcion*, ⸺U.S. ⸺, 131 S.Ct. 1740, 1745–46, 179 L.Ed.2d 742 (2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Also, the Supreme Court has held that there is a "fundamental principle that arbitration is a matter of contract." *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. ⸺, ⸺, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). "[C]ourts must put arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1746. (internal citation omitted.) Sections 3 and 4 of the FAA grant federal courts authority to compel arbitration and issue a stay upon the motion of one of the parties to the agreement.

The party who seeks to compel arbitration must establish "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate." *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981). Whether a contract is valid and enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998).  Nevertheless, when determining the scope of a valid arbitration clause, a federal district court is to use the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n. 4 (4th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24).

3

A district court must "engage in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted). To challenge the validity of an arbitration clause within a contract, a party must specifically challenge the arbitration clause, not just the contract as a whole. *See Buckeye Check Cashing, Inc,* 546 U.S. 440, 445 (2006). The scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).

### B.  *Validity and Enforceability of Arbitration Clause*

The Court must first decide if the Parties' Agreement ("Agreement") (Document 6) is valid and enforceable under West Virginia law. The burden is on the Defendant to demonstrate that a valid contract exists. *Mercury Constr. Corp.*, 656 F.2d at 939. Plaintiff essentially argues the Agreement is unenforceable due to a lack of a proper forum because two out of the three arbitration organizations are unavailable and the third forum is too one-sided to enforce. (Document 9 at 2). Plaintiff also argues the arbitration clause, itself, is unconscionable, thereby making the Agreement unenforceable. (Document 9 at 8-9). The parties do not appear to dispute that they entered into an arbitration agreement.   However, they do dispute whether an available forum exists, whether the arbitration clause was unconscionable and whether the Plaintiff's claims are beyond the scope of the arbitration clause.

4

   *1.  Availability of an Arbitration Forum*

   The parties' arbitration clause defines a claim as "any dispute between you and us that arises as a result of or has anything at all to do with: (1) your Account; (2) the events leading up to your becoming an Account holder; (3) this Agreement; (4) any prior credit account or agreement relating to such account; or (5) your relationship with us." (Document 6).   The term, "Administrator" in the arbitration clause, means "the National Arbitration Forum [NAF], the American Arbitration Association [AAA], or JAMS [Judicial Arbitration and Mediation Services Inc.]." (*Id*.)   The original agreement allows Plaintiff to select the arbitrator, but if Plaintiff fails to do so, the Defendant selects. (*Id*.) Plaintiff points out that the agreement calls for all claims to be resolved "under this Arbitration Provision and the Administrator's Rules that are in effect at the time the Claim is filed with the Administrator." (*Id*.) However, the Agreement was apparently modified in February of 2010 to include a new definition of Administrator.[1] (Document 13 Ex .C). The term "Administrator" was redefined as the "American Arbitration Association ('AAA'). . . or, in the event that AAA is not available as a forum for arbitration of a Claim, such alternative forum which administrates arbitration of a Claim in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. and the Administrator's rules." (*Id*.) The Defendant does not contest that NAF and JAMS are unable to arbitrate the current dispute. (Document 13 at n. 2.)

   In July 2009, AAA issued a moratorium on arbitrating cases concerning consumer debt collections if those cases were brought by the company and the consumer did not consent to the arbitration. (Document 9 Ex. 6).   Plaintiff argues this moratorium now allows Defendant to "divert consumer claims against it into AAA arbitration while it enjoys a judicial forum for its

---

1 Although it appears Defendant seemingly filed an amendment to the Credit Card Agreement in its reply, Plaintiff has not responded or requested leave of the Court to respond to this apparent amendment to the Credit Card Agreement supplied by the Defendant. *Compare* (Documents 6 and 13 Ex. C)

5

claims." (Document 9 at 5). Under AAA's moratorium, Defendant can only pursue a debt collection claim in a judicial forum against a consumer if the consumer agrees *at the time of the dispute* to arbitrate the Defendant's claim(s).[2] (Document 9 Ex. 6). (emphasis added). Further, AAA indicates that it will "continue to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations." (*Id*.) Thus, all claims except for consumer debt collection claims remain unaffected by the moratorium.   Therefore, to the extent Plaintiff argues that AAA's moratorium creates an agreement that is too one-sided to enforce, the Court finds AAA's moratorium and Plaintiff's argument are not applicable to the facts of this

Even if AAA is unable or unwilling to serve as an administrator, the Court is empowered to select a substitute arbitrator under § 5 of the FAA.[3] The Court must next address whether the arbitration agreement is unconscionable so that neither AAA nor a substitute arbitrator appointed by the Court could administer Plaintiff's claims.


*2.  Unconscionability under West Virginia Law*

To be enforceable, a contract cannot be unconscionable. Plaintiff argues the arbitration clause is unconscionable under *Brown v. Genesis Healthcare Corp.*, ___ W.Va. ___, ___, ___ S.E.2d ___, ___ (Nos. 35494, 35546, 35635, June 29, 2011).   Although the West Virginia

---

2 "Matters included in this moratorium are: consumer debt collections programs or bulk filings and individual case billings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or, the case involves a telecom bill or the case involves a consumer finance matter." (Document 9 Ex. 6.)

3 "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." 9 U.S.C. § 5.

Supreme Court had touched on the issue of unconscionability, the Court had "never fully explained the principles and application behind unconscionability." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 2). Thus, in *Brown*, the Court set out a comprehensive discussion of unconscionability under West Virginia law.

"The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 52). "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 54) (citing Syl. pt. 4, *Art's Flower Shop, Inc. v. Chesapeake and Potomac Telephone Co. of West Virginia, Inc*., 186 W.Va. 613, 413 S.E.2d 670 (1991)). "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 64).   This is to be applied on a sliding scale. *Id*. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Id*.

Procedural unconscionability addresses the "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 60).   This requires an examination of "a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties." *Id*. A non-exhaustive list of

7

inadequacies includes: "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." *Id*.   Procedural unconscionability often entails a contract of adhesion, but that is not necessarily the case. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 57-59).   "A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 61).   A court should give greater scrutiny to an adhesion contract to determine if "it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." *Id*.

Substantive unconscionability addresses the "unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 63).   When examining substantive unconscionability "courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Id*.   The burden of proof rests with the party who seeks to establish a contract term is unconscionable.   *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 55).

In *Brown*, the Court held that "Congress did not intend for arbitration agreements, adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, and which require questions about the negligence be submitted to arbitration, to be governed by the Federal Arbitration Act." *Brown, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 73)*. The Court

examined three consolidated cases which essentially had the same facts. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 3-4). "In each case, a person was ill or incapacitated and needed extensive, ongoing nursing care.  The person was admitted to a nursing home, and a family member signed an admission agreement with the nursing home that contained an arbitration clause." *Id*. The arbitration clause required the ill or incapacitated person to arbitrate personal injury claims (or any other dispute) that arose from the facility's subsequent actions. *Id*.

Plaintiff argues the Agreement is a contract of adhesion, like in *Brown*, because nothing in the Agreement indicates that any of the terms were negotiable. (Document 9 at 8-9).  Plaintiff, therefore, contends the Agreement was "tendered on a take it or leave it basis." (Document 9 at 9). She argues the arbitration clause "sweeps in subsequent criminality that consumers could not have possibly, much less reasonably, anticipated." (*Id*.) Finally, Plaintiff contends that "[i]f an arbitration clause dealing with a party's subsequent negligence is unconscionable, as held in *Brown*, one dealing with such intentional, criminal wrongdoing is too." (*Id*.) The Defendant did not directly address *Brown* in its reply, but instead relied on an older case which held "the fact that the Agreement is a contract of adhesion does not necessarily mean that it is also invalid." *State ex rel. Clites v. Clawges*, 224 W.Va. 299, 685 S.E.2d 693 (2009).

The Court finds that the Agreement is a contract of adhesion because the agreement contains boiler-plate language that does not appear to be subject to negotiation.   Rather, it appears that it was given on a take it or leave it basis. *State ex rel. Saylor v. Wilkes*, 216 W.Va. 766, 773, 613 S.E.2d 914, 921 (2005).   Further, nothing in the language of the Agreement allows Plaintiff to opt-out of any portion or term in the agreement.   However, this finding, alone, does not establish that the contract was procedurally unconscionable.   Unlike in *Brown,* where the plaintiffs were

9

each in a medical emergency situation and their representatives had little choice but to immediately accept the terms of the agreement upon their admittance to the nursing home, here, Plaintiff puts forth no pressing need or emergency to enter into the Agreement. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 74-84).   Further, in *Brown*, the plaintiffs had little choice but to enter into the agreement if they wanted to receive further medical care and did not appear to have any alternatives. *Id.*   Here, Plaintiff puts forth no evidence of a pressing need and the record is void of any evidence that she had no other alternative but to enter into a credit card agreement with this particular Defendant.   Additionally, Plaintiff actually was the party that assented to the agreement as opposed to the situation in *Brown* where the agreements were entered into by family members on behalf of the plaintiffs. (Slip Op. at 74-84). Plaintiff wholly fails to put forth any evidence that the Agreement was procedurally unconscionable other than her assertion that the agreement was a contract of adhesion, which the Court noted *supra* does not in itself make a contract procedurally unconscionable. Accordingly, the Court finds the Agreement is not procedurally unconscionable.   The Court will also consider whether the Agreement is substantively unconscionable.

The Court finds the Agreement is not substantively unconscionable under West Virginia law. Without any elaboration, Plaintiff contends that since the West Virginia Supreme Court found an arbitration clause dealing with a party's subsequent negligence to be unconscionable in *Brown*, then an arbitration clause dealing with subsequent intentional and criminal wrongdoings should likewise be unconscionable. (Document 9 at 9). Unlike the arbitration clause in *Brown*, where nursing home residents, through their personal representatives, waived their rights to pursue subsequent personal injury or wrongful death claims in court, here, there is a common consumer

10

credit card arbitration clause. In determining if a term in a contract is substantively unconscionable, courts should generally "consider the commercial reasonableness of the terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ *(Slip Op. at 63)*.  In *Brown*, the court found the nursing home agreement substantively unconscionable for several reasons.   First, the court found there was no "modicum of bilaterality" because the nursing home could pursue payments and discharges in any forum it chose, while the plaintiff was limited to arbitrating all of his claims. *Brown*, ___ W.Va. at ___, ___ S.E.2d at ___ (Slip Op. at 77).   Second, nothing in the nursing home agreement allowed the residents to reject or opt out of the arbitration clause. *Id*. Third, the court found the fees associated with filing an arbitration claim "in the context of an action for negligence by a nursing home was an unconscionable bar to relief." *Id*. at 77-78. Fourth, the court found the arbitration clause was not commercially reasonable because it was "beyond the reasonable expectations of an ordinary person." *Id*. at 78. The determination that the term was commercially unreasonable was made in part because the court found it clearly violated West Virginia's public policy "that nursing homes are not to require residents to sign agreements that waive the right to commence a civil action, a right that is preserved in the West Virginia Constitution." *Id*. at 78-79. *See* Section 15(c) of West Virginia's Nursing Home Act, W.Va. Code §§ 16-5C-1 to -20.

Like the contract in *Brown*, the Agreement in the instant case does not give Plaintiff the right to reject or opt out of the arbitration clause, but Plaintiff argues this as a reason why the Agreement was a contract of adhesion, not that it was substantively unconscionable.[4] The Court

---

4 Defendant's new agreement apparently allows consumer to opt out within the thirty (30) days. (Document 9 Ex. 8 at 14.)

finds that the lack of an opt-out clause, alone, under the facts of this case, does not make the Agreement substantively unconscionable.  Rather, it is evidence that the Agreement was a contract of adhesion, which does not address the substantive unconscionablity of a contract. Furthermore, *Brown* has several stark differences from the instant case. Unlike in *Brown*, there is a "modicum of bilaterality" here because both parties must submit all of their claims to arbitration.[5] Additionally, Plaintiff did not put forth any public policy that would be violated by enforcing the arbitration clause. Plaintiff simply argues, without elaboration, the clause sweeps in subsequent criminal activity that she could not have possibly or reasonably anticipated being a part of the original agreement. (Document 9 at 9). The Court finds that Plaintiff's claims could be "reasonably anticipated" to be covered by the parties' agreement, which the Court addresses in greater detail *infra*. The Court finds the Agreement is not substantively unconscionable. Therefore, the Plaintiff having failed to demonstrate that any aspect of the arbitration clause is either procedurally or substantively unconscionable, the Court finds the Agreement is valid and enforceable under West Virginia law.

## C.  Scope of Arbitration Agreement

In light of the Court's finding that the parties entered a valid and enforceable agreement, the Court must now decide whether the dispute in the instant case falls within substantive scope of the Agreement. *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir.1997) (citations and quotation marks omitted). The Agreement's broad arbitration clause seems to cover almost any conceivable dispute that could arise from interactions between the parties.[6] "Arbitration is a

---

5  The Court rejected Plaintiff's argument that Defendant could enjoy a judicial forum, while Plaintiff was relegated to arbitration. *See supra* pp. 5-6.
6  "'Claim' means any dispute between you and us that arises as a result of or has anything at all to do with: (1) your

12

matter of contract and a party cannot be required to submit to arbitration any dispute which he has
not agreed to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S.
574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Questions concerning the scope of an arbitration
clause are to be left to the arbitrator, "unless it can be said with positive assurance that the
arbitration clause is not susceptible of an interpretation that covers the asserted dispute."
*Winston-Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 Fed. Appx. 128, 133
(4th Cir. 2003) (quoting *AT & T Technologies, Inc. v. CWA*, 475 U.S. 643, 649-50, 106 S.Ct. 1415,
89 L.Ed.2d 648 (1986)).   The court, in *Winston-Salem,* enunciated the standard the Court should
use in deciding whether the party's claims fall within the substantive scope of the Agreement as
required by *Glass*. In essence, the Court should find that a party's claims fall within the scope of
the arbitration clause, unless the Court finds the arbitration clause cannot possibly be interpreted to
cover the claims at issue. This, however, does not prevent an arbitrator from later finding that a
party's claims are beyond the scope of an arbitration clause because the arbitrator is tasked with
ultimately deciding the specific scope of an arbitration clause.

Plaintiff argues the allegations in her complaint amount to "misconduct that the United
States Congress declares is 'unlawful' and that the West Virginia Legislature deems criminal."
(Document 9 at 7) (citing 47 U.S.C. § 227; W.Va. Code § 46A-5-103(4)). Further, Plaintiff
contends her third claim alleges that Defendant committed a felony. (Document 9 at 7) (citing

Account; (2) the events leading up to your becoming an Account holder; (3) this Agreement; (4) any prior credit
account or agreement relating to such account; or (5) your relationship with us. This includes disputes relating to any
products, insurance or other services offered to you as an Account holder. This includes disputes about whether this
Arbitration Provision is valid or binding or about whether or when it applies. It includes disputes relating to
constitutional provisions; statutes; ordinances; regulations; court decisions; compliance with the Agreement; and
wrongful acts of every type (whether intentional; fraudulent; reckless; or just negligent). It includes requests for
money, for orders requiring you or us to take certain actions (which are sometimes referred to as "injunctive relief")
and for any other kind of relief. This Arbitration Provision applies to Claims that arise prior to the effective date of this
Arbitration Provision." (Document 6)

W.Va. Code § 61-3C-14a). Plaintiff cites an opinion of the Supreme Court of South Carolina wherein the court declined to interpret a consumer's arbitration clause to apply to the defendant's outrageous and unforeseen actions in collecting a debt. (Document 9 at 7) (citing *Chassereau v. Global-Sun Pools, Inc.*, 373 S.C. 168, 644 S.E.2d 718 (2007)).  In *Chassereau*, a consumer alleged that a debt collector "repeatedly phoned her at her workplace; disclosed private information to [her] friends, relatives, and co-workers; and also made false and defamatory statements about [her] to these same people." *Chassereau*, 373 S.C. at 170.  The Court finds *Chassereau* to be distinguishable and, therefore, unpersuasive because Plaintiff does not allege any conduct that would amount to "outrageous and unforeseen" actions, as was the case in *Chassereau*.

Plaintiff argues that a broad arbitration clause that covers "any dispute" lacks any limiting principle and, therefore, should not be enforced. She asserts the arbitration clause, if enforced, would require her to arbitrate a claim for assault even "if an overzealous collector 'kneecapped' her or threatened her life to collect the debt." (Document 9 at 7-8).  Plaintiff acknowledges that this example is far-fetched, but claims it is "the logical implication of sweeping into the clause anything and everything that could possibly occur within the parties' relationship." (*Id*. at 8). Further, Plaintiff contends her claims against Defendant are independent of any contractual relationship the parties had "aside from the relationship of a criminal to its victim." (*Id*.) The Court respectfully disagrees. The Court finds that the alleged "criminal" actions associated with the placing of phone calls to collect on a debt are not beyond the scope of the Agreement because the Court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Winston-Salem,* 55 Fed. Appx. at 133. The Court

14

makes this finding considering that the scope of an arbitration agreement must be construed with "due regard . . . to the federal policy favoring arbitration, and ambiguities . . . [must be] resolved in favor of arbitration." *Cara's Notions*, 140 F.3d at 569 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989)).   In summary, the Court finds that the Plaintiff's claims are arbitrable because the claims are within the scope of a valid and legally enforceable agreement and because it cannot be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the Plaintiff's claims.

## CONCLUSION

WHEREFORE, as discussed herein, the Court does hereby **ORDER** that *Defendant's Motion to Dismiss or, in the Alternative, Stay Proceedings and Compel Arbitration* (Document 4) be **GRANTED IN PART** and **DENIED IN PART**.   Specifically, the Court **ORDERS** that Plaintiff's claims be **REFERRED** to arbitration in accordance with the terms of the contract and the Federal Arbitration Act.   To the extent that Defendant moves to dismiss the present action, the Court **ORDERS** that the motion be **DENIED.**   Finally, the Court **ORDERS** that this action be **STAYED** pending resolution of arbitration and **REMOVED** from the Court's active docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:       January 31, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

15